[Cite as *Williams v. Ohio Dept. of Job & Family Servs.*, 2012-Ohio-4659.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### LOGAN COUNTY

HELEN WILLIAMS,

     APPELLANT,                             CASE NO. 8-11-18

     v.

OHIO DEPARTMENT OF JOB               O P I N I O N
AND FAMILY SERVICES,

     APPELLEE.

---

**Appeal from Logan County Common Pleas Court**
**Trial Court No. CV 11 04 0153**

**Judgment Affirmed**

**Date of Decision:   October 9, 2012**

---

APPEARANCES:

    *Donald C. Brey, Elizabeth J. Watters, Thom L. Cooper*
    *And Elizabeth Durnell*  for Appellant

    *Amy R. Goldstein*  for Appellee

Case No. 8-11-18

**SHAW, P.J.**

{¶1} Appellant, Helen Williams ("Helen"), appeals the September 20, 2011 judgment of the Logan County Court of Common Pleas affirming the Administrative Appeal Decision of the Ohio Department of Job and Family Services finding that Appellee, the Logan County Department of Job and Family Services (the "Agency"), correctly identified two improper resource transfers which subjected Helen to a period of restricted Medicaid coverage for her nursing home care. The trial court also determined that the Agency incorrectly calculated the amount of the improper transfers and directed the Agency to reassess Helen's period of restricted Medicaid coverage.

{¶2} The facts in this case are undisputed by the parties. Helen resides at a nursing home facility. Under the applicable law, she is considered the "Institutionalized Spouse." Helen's husband, Bobby, continues to reside in the couple's home and is considered the "Community Spouse".[1]

{¶3} Prior to applying for Medicaid coverage for her nursing home care, the two following transfers of Helen and Bobby's assets were made. On June 9, 2010, the couple transferred funds in the amount of $17,114.05 to Bobby's son,

---

[1] Section 5101:1-39-36.1 (B) provides the following definitions relevant to this case.
 (2)"Community spouse" describes an individual who is not in a medical institution or nursing facility and has an institutionalized spouse .*.*.*.
 (3)"Institutionalized spouse" describes an individual who receives long term care services in a medical institution, a long term care facility, under a [a qualified program] for at least thirty consecutive days.

-2-

Helen's step-son. On July 28, 2010, Helen and Bobby transferred their home out of their individual names to a revocable trust, the "Bobby Williams Family Trust," via a quitclaim deed. The trust was created by Bobby for his sole benefit and listed Bobby as the initial trustee in the trust document.

{¶4} On August 18, 2010, Helen's Authorized Representative ("AR") applied for Medicaid benefits on her behalf. The Agency then calculated the Community Spouse Resource Allowance amount (the "CSRA"), which is a capped, formula based amount of the couple's joint resources that the Community Spouse is allowed to retain to live on when the institutionalized spouse applies for Medicaid coverage of her nursing facility expenses. *See Wisconsin Dept. of Health and Family Services v. Blumer*, 534 U.S. 473, 482-83 (2002); Ohio Admin. Code 5101:1-39-36.1. The remaining resources are deemed available to the Institutionalized Spouse for the purpose of calculating her Medicaid eligibility. *See* Ohio Admin. Code 5101:1-39-36; Ohio Admin. Code 5101:1-39-36.1. Specifically, the remainder of the couple's assets are to be used for the Institutionalized Spouse's care until that spouse has less than $1,500—at which point Medicaid eligibility is possible. Ohio Admin. Code 5101:1-39-05(B)(11). If the Community Spouse uses resources above the amount allocated to him by the CSRA, then it is deemed an "improper transfer" because resources have been

transferred away from the Institutionalized Spouse's share. *See* Ohio Admin. Code 5101:1-39-07.

**{¶5}** Here, the Agency determined that Helen and Bobby owned assets totaling $119,272. Accordingly, Bobby's CSRA was $59,636 or half of the couple's total combined assets as of the resource assessment date. Notably, the couple's home, valued at $89,500, was considered a "countable resource" in the resource assessment because it was held in the revocable trust at the time. After the CSRA was established, neither Helen nor Bobby disputed the CSRA calculated by the Agency.

**{¶6}** On August 25, 2010, Bobby transferred title to the home from the revocable trust to his individual name via a fiduciary deed. On August 30, 2010, Helen entered the nursing facility.

**{¶7}** On October 12, 2010, the Agency approved Helen's application for Medicaid coverage. However, the Agency also determined that Helen was subject to 17.7 months of restricted Medicaid coverage[2] because it identified two "improper transfers" in the amount of $106,614.05, both of which occurred within the sixty-month look back period. *See* Ohio Admin. Code 5101:1-39-07(B). The first of these improper transfers was identified as the $17,114.05 given to Helen's

---

[2] "Restricted Medicaid coverage means the period of time an individual is ineligible for nursing facility payments, a level of care in any institution equivalent to that of nursing facility services and home or community-based services * * *." Ohio Admin. Code 5101:1-39-07(B)(12).

step-son on June 9, 2010.[3] The second improper transfer identified by the Agency was the transfer of the home from the revocable trust to Bobby in the amount of $89,500.

{¶8} Helen, through her AR, administratively appealed the Agency's determination and challenged the impropriety of the transfers and the imposed period of restricted Medicaid coverage. On January 19, 2011, after a hearing, the State Hearing Decision was issued which determined that the Agency correctly identified the two improper transfers in the amount of $106,614.05 and correctly assessed the period of restrictive Medicaid coverage. Helen then filed an appeal of the State Hearing Decision to the Director of the Department of Job and Family Services. On this appeal, Helen conceded the transfer of the $17,114.05 was improper, but continued to dispute the Agency's finding that the August 25, 2010 transfer of the home from the revocable trust to Bobby constituted an improper transfer.

{¶9} On March 18, 2011, the Administrative Appeal Decision was issued by a panel of three administrative appeal examiners who found that the transfer of the home constituted an improper transfer. However, the administrative appellate panel concluded that the Agency incorrectly calculated the period of restrictive

---

[3] The record reflects that on June 9, 2010, an account owned by the couple in the amount of $50,228.10 was liquidated and closed. On the same day, Bobby's son and daughter were each given $25,114.05. On July 27, 2010, Bobby's daughter re-conveyed the entire $25,114.05. However, on July 27, 2010, Bobby's son only re-conveyed $8,000, leaving a difference of $17,114.05, which was later identified as the improper transfer. On September 21, 2010, Bobby and his son executed a promissory note for a loan in the amount of $17,000, which required Bobby's son to repay the loan in monthly installments.

Medicaid coverage. Instead of the entire value of the home being considered the amount of the improper transfer, the administrative appellate panel determined that penalty amount should only consist of the difference between the CSRA and the value of the resources that Bobby received as a result of the improper transfer. Accordingly, the administrative appellate panel concluded that a new period of restricted Medicaid coverage should be assessed and reversed the State Hearing Decision on this limited basis.

{¶10} Helen then appealed the Administrative Appeal Decision to the Logan County Court of Common Pleas, which affirmed the Administrative Appeal Decision, finding that it was supported by reliable, probative and substantial evidence. The trial court also remanded the case to the Agency to recalculate the period of restricted Medicaid coverage.

{¶11} Helen filed a notice of appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED IN AFFIRMING APPELLEE'S MARCH 18, 2011 ADMINISTRATIVE APPEAL DECISION AND JANUARY 19, 2011 STATE HEARING DECISION THAT APPELLANT'S TRANSFER OF HER HOME FROM A REVOCABLE TRUST TO THE COMMUNITY SPOUSE CONSTITUTED AN IMPROPER TRANSFER OF ASSETS THAT RESULTED IN A PERIOD OF RESTRICTED ELIGIBILITY FOR MEDICAID BECAUSE THE DECISIONS ARE NOT SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE. THE EVIDENCE**

**ESTABLISHES THAT THE TRANSFER OF THE PRIMARY RESIDENCE FROM A REVOCABLE TRUST TO A MEDICAID APPLICANT'S SPOUSE WAS NOT AN IMPROPER TRANSFER FOR THE PURPOSE OF MEDICAID ELIGIBILITY AND SHOULD BE TREATED THE SAME AS A TRANSFER DIRECTLY FROM THE INSTITUTIONALIZED SPOUSE TO THE COMMUNITY SPOUSE.**

<u>**ASSIGNMENT OF ERROR NO. II**</u>

**THE TRIAL COURT ERRED IN AFFIRMING APPELLEE'S MARCH 18, 2011 ADMINISTRATIVE APPEAL DECISION AND JANUARY 19, 2011 STATE HEARING DECISION BECAUSE THE DECISION *[SIC]* ARE NOT IN ACCORDANCE WITH LAW BECAUSE (1) THE TRANSFER OF APPELLANT'S HOUSE FROM A REVOCABLE TRUST WAS NOT AN IMPROPER TRANSFER FOR PURPOSES OF MEDICAID ELIGIBILITY AND COVERAGE UNDER OHIO LAW; (2) OHIO ADMIN. CODE 5101:1-39-07(E) AND (G) DO NOT REQUIRE THE VALUE OF THE HOME TO BE INCLUDED WHEN DETERMINING THE AMOUNT OF RESOURCES TRANSFERRED FOR CSRA PURPOSES; (3) THE DECISIONS ARE INOPPOSITE *[SIC]* TO AND IN VIOLATION OF OHIO ADMIN. CODE 5101:1-39-27.1 AND 5101:1-39-07, WHICH PERMIT THE TRANSFER TO ASSETS FROM A REVOCABLE TRUST TO THE COMMUNITY SPOUSE; (4) THE DECISIONS ARE INOPPOSITE *[SIC]* TO AND IN CONFLICT WITH PRIOR DETERMINATIONS AND STATE HEARING DECISIONS BY APPELLEE WITH OUR APPLICATIONS FOR MEDICAID BENEFITS IN BOTH LOGAN COUNTY AND THROUGHOUT THE STATE OF OHIO; AND (5) APPELLEE IS NOT PERMITTED TO INTERPRET ITS RULES SO AS TO REQUIRE DIFFERENT TREATMENT OF MEDICAID APPLICANTS WITHOUT A RATIONAL RELATIONSHIP TO A LEGITIMATE STATE PURPOSE.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED IN AFFIRMING APPELLEE'S MARCH 18, 2011 ADMINISTRATIVE APPEAL DECISION AND JANUARY 20, 2011 STATE HEARING DECISION BECAUSE THE DECISIONS' INTERPRETATION OF OHIO ADM. CODE 5101:1-39-31 & 5101:1-39-27.1 ARE NOT IN ACCORDANCE WITH FEDERAL MEDICAID LAW, WHICH INVALIDATES APPELLEE'S OWN RULES UNDER THE SUPREMACY CLAUSE.**

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED WHEN IT DETERMINED THAT OHIO ADMIN. CODE 5101:1-39-27.1 AND 5101:1-39-07 DO NOT PERMIT THE TRANSFER OF ASSETS FROM AN INSTITUTIONALIZED SPOUSE'S REVOCABLE TRUST TO THE COMMUNITY SPOUSE.**

### ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED WHEN IT DETERMINED THAT APPELLANT DID NOT REBUT THE PRESUMPTION OF IMPROPRIETY OF THE TRANSFER PURSUANT TO OHIO ADMIN. CODE 5101:1-39-07(E) & (G), AND THAT OHIO ADMIN. CODE 5101:1-39-07(G) REQUIRED THAT THE VALUE OF THE APPELLANT'S HOME BE INCLUDED WHEN DETERMINING THE AMOUNT OF RESOURCES TRANSFERRED FOR COMMUNITY SPOUSE RESOURCE ALLOWANCE.**

### ASSIGNMENT OF ERROR NO. VI

**THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE COLLATERAL ESTOPPEL EFFECT TO APPELLEE'S PRIOR DETERMINATIONS AND STATE HEARING DECISIONS WITH OTHER APPLICATIONS FOR MEDICAL BENEFITS IN LOGAN COUNTY AND THROUGHOUT THE STATE OF OHIO, WHICH DECISIONS APPROVED THE TRANSFER OF AN**

**INSTITUTIONALIZED SPOUSE'S HOME FROM A REVOCABLE TRUST TO THE COMMUNITY SPOUSE AND ALLOWED APPELLEE TO INTERPRET ITS RULES AS TO REQUIRE DIFFERENT TREATMENT OF MEDICAID APPLICANTS WITHOUT A RATIONAL RELATIONSHIP TO A LEGITIMATE STATE PURPOSE.**

**{¶12}** For clarity and ease of discussion we elect to address some of Helen's assignments of error together and out of order.

*First, Second, Fourth, and Fifth Assignments of Error*

**{¶13}** These assignments of error focus on whether the Agency correctly determined that the August 25, 2010 transfer of the home from the revocable trust to Bobby constituted an "improper transfer," and whether under these circumstances the relevant provisions of the Ohio Administrative Code require the value of the home to be included when determining the amount of resources transferred for CSRA purposes.

**{¶14}** Before addressing Helen's specific arguments on appeal, we must review the relevant law. As previously mentioned, when the Institutionalized Spouse applies for Medicaid, the Agency assesses the couple's resources, whether jointly or separately held, as of the beginning of the first continuous period of institutionalization to determine the amount of the couple's "countable resources." *See* 42 U.S.C. § 1396r-5; Ohio Admin. Code 5101:1-39-36.1(C)(3). The Agency then determines the CSRA, which is generally one-half of the couple's total resources as of that date. There is a "fair hearing" mechanism in place through

which a couple may obtain a higher CSRA by establishing that the standard CSRA is inadequate to raise the community spouse's income to the "minimum monthly maintenance needs allowance." *See* 42 U.S.C. § 1396r-5(e)(2)(C); Ohio Admin. Code 5101:1-39-07(G). Congress enacted the CSRA provisions in order to "protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance. *Blumer* at 480; *see also* 42 U.S.C. § 1396r-5.

*1. Treatment of the Home for CSRA purposes*

**{¶15}** Ohio Admin. Code section 5101:1-39-31(B)(2) defines the home as "any property in which an individual has an ownership interest in and which serves as the individual's principal place of residence." Generally, the value of the home is exempt as a "countable resource," meaning that its value is not considered for purposes of determining an applicant's Medicaid eligibility nor is the value of the home included in the resource assessment when the Agency calculates the CSRA. However, Ohio Admin. Code 5101:1-39-31(C) requires certain criteria to be met in order for the home exemption to apply:

> **(1)  For the value of the home to be exempt:**
>
> **(a)  The home must be the individual's or the individual's spouse principal place of residence; and**
>
> **(b)  *The deed to the home must be in the individual's or individual's spouse name; and***

**(c)   The home must comply with the provisions in paragraphs (C)(5) to (C)(7) of this rule.**

(Emphasis added).

*2. Transfer of Resources*

{¶16} Ohio Admin. Code 5101:1-39-07 governs the transfer of resources in the context of Medicaid eligibility.  An "improper transfer" is defined as "a transfer on or any time after the look-back date[4] [] of a legal or equitable interest in a resource for less than fair market value for the purpose of qualifying for Medicaid, a greater amount of Medicaid, or for the purpose of avoiding the utilization of the resource to meet medical needs or other living expenses." Ohio Admin. Code 5101:1-39-07(B)(5).  Subsection (C) identifies certain transfers that are *presumed* to be improper, in particular "any transfer by an individual[5] of an exempt home as defined in Chapter 5101:1-39 of the Administrative Code, whether prior to or after the Medicaid application date."   Ohio Admin. Code 5101:1-39-07(C)(4).

{¶17} If a transfer is presumed to be improper under the administrative rules, Ohio Admin. Code 5101:1-39-07(D) provides a procedure through which a

---

[4] The "look-back date" is generally sixty months prior to the date the applicant has both applied for Medicaid and is institutionalized.  *See* Ohio Admin. Code 5101:1-39-07(B)(3) and (9).

[5] For the purposes of the transfer rules set forth in Ohio Admin. Code 5101:1-39-07 an "Individual" is a defined as the applicant/recipient of a medical assistance program, as well as the applicant/recipient's spouse. *See* Ohio Admin. Code 5101:1-39-07(B)(7).

Medicaid applicant/recipient or her spouse can rebut the presumption of the improper transfer.

**(D) Rebutting the presumption of an improper transfer.**

**(1)   The individual may rebut the presumption established under paragraph (C) of this rule. The individual must first provide a full written accounting and documentation of the transfer which clearly explains the following:**

**(a)   The purpose for transferring the resource; and**

**(b)   The attempts to dispose of the resource at fair market value; and**

**(c)   The reasons for accepting less than fair market value for the resource; and**

**(d)   The individual's relationship, if any, to the person to whom the resource was transferred.**

**(2)   The individual has the burden of rebutting the presumption of improper transfer by clear, convincing, and credible evidence.**

**(a)   The evidence may include, but is not limited to: any documentary evidence such as contracts, realtor agreements, sworn statements, third party statements, medical records, financial records, court records, and relevant correspondence.**

**(b)   Evidence which is provided must be reviewed by the administrative agency to determine if it is clear, convincing and credible.**

**(c)   Evidence that is not clear, convincing and credible does not rebut the presumption of an improper transfer.**

**(3)   The occurrence after a transfer of the resources of one or more of the following, while not conclusive, may indicate**

**resources were transferred exclusively for some purpose other than establishing medicaid eligibility:**

**(a) Traumatic onset of disability or blindness (e.g., due to traffic accident); or**

**(b) Diagnosis of a previously undetected disabling condition.**

**(4) *If the presumption of improper transfer is not overcome by the individual's rebuttal, the administrative agency must restrict medicaid coverage if the individual is otherwise eligible for medicaid.***

(Emphasis added).

{¶18} Subsection (E) provides for an exception to the presumption of improper transfers and allows for the home to be transferred between spouses so long as certain requirements are met. In particular, Ohio Admin. Code 5101:1-39-07(E)(1) provides that:

**(E) The following transfers for less than fair market value shall not be considered an improper transfer**:

**(1) The individual may transfer the home, as defined in rule 5101:1-39-31 of the Administrative Code, that is still considered the principal place of residence in accordance with Chapter 5101:1-39 of the Administrative Code *to any of the following individuals*:**

**(a) The individual's spouse, provided:**

**(i) The transfer is for the sole benefit of the spouse; and**

**(ii) The individual's spouse does not subsequently transfer the home for less than fair market value; and**

**(iii) Any transfer of the home by the spouse on or after the look-back date shall be reviewed by the administrative agency under the transfer of resources provisions in this rule; and**

**(iv) The amount of the transfer is equal to one hundred per cent of the value of the property established by the county auditor at the time of the transfer, less any amount or portion of the property that is not transferred.**

(Emphasis added).

{¶19} However, the transfer of assets between spouses is not without limitations. Specifically, Subsection (G) provides the following parameters on transfers between spouses after the CSRA has been established.

**(G) Any transfer between spouses in order to comply with the Medicaid community spouse resource allowance (CSRA) computed pursuant to Chapter 5101:1-39 and Chapter 5101:6-7 of the Administrative Code may not be applied inconsistently with the rules setting limits on the CSRA or the minimum monthly maintenance needs allowance (MMMNA).**

**(1) Any amount of a couple's resources exceeding the CSRA must be used for the benefit of the institutionalized spouse and/or community spouse.**

**(2) _Any amount of a couple's resources exceeding the CSRA may not be transferred to the community spouse or to another for the sole benefit of the community spouse unless permitted in a hearing decision issued under Chapter 5101:6-7 of the Administrative Code._**

**(3) Any amount of a couple's resources exceeding the CSRA may not be converted to another form for the purpose of generating additional income for the community spouse unless permitted in a hearing decision issued under Chapter 5101:6-7 of the Administrative Code.**

**(4) Transfers in excess allowed by this rule, must be presumed an improper transfer.**

(Emphasis added).

*3. Trust Provisions*

{¶20} Ohio Admin. Code 5101:1-39-27.1(C)(2) provides the following regarding the treatment of a revocable trust for purposes of Medicaid eligibility.

**(b) Revocable trusts [] are treated as follows.**

**(i)** *The corpus of the trust is considered a resource available to the individual.*[6]

**(ii) Payments from the trust to, or for the benefit of, the individual are considered unearned income.**

**(iii)** *Any other payments from the trust are considered an improper transfer subject to the rules prohibiting the improper transfer of resources.*

\* \* \*

**(f) The following are look-back periods for transfers of assets involving trusts under this category. The baseline date and the regulations relating to transfers of assets are defined in rule 5101:1-39-07 of the Administrative Code.**

**(i)** *For revocable trusts: when a portion of the trust is distributed to someone other than the individual, and the distribution is not for the benefit of the individual, the distribution is an improper transfer.* **The look-back period is sixty months from the baseline date. The transfer is considered to have taken place on the date upon which the payment to someone other than the individual was made.**

---

[6] Notably, an "Individual" is defined for the purposes of the trust provisions as *only* an applicant for or recipient of a medical assistance program. The definition does not include the spouse. *See* Ohio Admin. Code 5101:1-39-27.1(B)(5).

(Emphasis added.)

*4. Prior Appeal Determinations*

**{¶21}** At the first level of review, after Helen appealed the initial assessment of the Agency calculating a 17.7 month period of restricted Medicaid coverage, the State Hearing Officer affirmed the Agency's findings and determined that the transfer of the home from the revocable trust to Bobby constituted an improper transfer. The State Hearing Officer relied on the specific trust provisions in Ohio Admin. Code 5101:1-39-27.1(C)(2)(f)(i), *supra*, and concluded the following.

> **In this case the property was transferred from the trust to the [Community Spouse] and *not from the Appellant to the Community Spouse*. The transfer was not for the benefit of the [Institutionalized Spouse]. Therefore, per this rule the transfer is indeed an improper transfer of resources.**

(State Hearing Decision at 7) (emphasis added). The State Hearing Officer also discussed why the provision in Ohio Admin. Code 5101:1-39-07(E) allowing the home to be transferred between spouses did not apply in these circumstances.

> **This rule states that the individual can transfer the home that is the primary residence to the spouse and that transfer is not an improper transfer of resources. The detail in this case that must be closely examined, however, is that the home was not *directly* transferred from the [Institutionalized Spouse] to the [Community Spouse]. The home in question was instead transferred from both parties, into a revocable trust, and then again transferred to only the [Community Spouse]. Therefore, since the home was transferred from the trust to the**

-16-

> **[Community Spouse], instead of directly from the [Institutionalized Spouse] to the [Community Spouse], the protection provided by 5101:1-39-07(1)(E)(1) [*sic*] from improper transfer was lost since the transfer was no longer done by the individual.**

(Id. at 8).

{¶22} At the second level of review, the panel of three administrative appeal examiners noted that in order for the value of home to be considered exempt in the resource assessment "the deed to the home must be in the individual's or the individual spouse's name." Ohio Admin. Code 5101:1-39-31(C)(1). However, at the time the resource assessment was conducted, the deed to the home was not in either Helen's or Bobby's name, but was titled in the name of the revocable trust. The administrative appellate panel made the following observation.

> **[T]he resource assessment correctly included the home as an available resource because, at the time, the appellant's homestead was held in the revocable trust. Because the home was considered included in the resource assessment, the Community Spouse's resource allowance reflected the increased value of the couple's resources. The value of the couple's resources, including the house was $119,272, resulting in a CSRA of $59,636. Without including the house, the couple's resources would total only $29,772, which would result in the community spouse receiving the CSRA minimum of $17,865. By including the home in the resource assessment and then immediately removing it from the resources by transferring it to the Community Spouse, the couple was attempting to artificially inflate the value of the resources so that the Community Spouse received a larger CSRA, and therefore more of the couple's assets.**

-17-

(Administrative Appeal Decision at 3).

**{¶23}** The administrative appellate panel acknowledged that Ohio Admin. Code 5101:1-39-07(E) permits the home to be transferred between spouses without penalty. However, the administrative appellate panel concluded that this provision must be read in conjunction with Ohio Admin. Code 5101:1-39-07(G)(2), which provides that *"[a]ny amount of a couple's resources exceeding the CSRA may not be transferred to the community spouse or to another for the sole benefit of the community spouse unless permitted in a hearing decision issued under Chapter 5101:6-7 of the Administrative Code.* Accordingly, because the house, which was counted a part of the couple's resources, was transferred in excess of the CSRA, the administrative appellate panel determined that the transfer was improper.

**{¶24}** At the final level of review prior to this appeal, Helen appealed the Administrative Appeal Decision to the Logan County Court of Common Pleas pursuant to R.C. 5101.35 and R.C. 119.12. After oral argument, the trial court issued its decision affirming the determination of the administrative appellate panel. In particular, the trial court found that the couple's transaction of removing the home from the revocable trust to Bobby's individual name resulted in an improper transfer. Helen argued that the transfer was only presumed to be improper. However, the trial court concluded that "the evidence of that use of a

revocable trust has enhanced the amount of property going to the community spouse is further evidence of the impropriety of the transfer and does not rebut the presumption but only substantiates it." (Judgment Entry, Sept. 20, 2011 at 4).

*Standard of Review*

{¶25} Revised Code Section 5101.35 governs judicial review of administrative appeal decisions issued by ODJFS and authorizes appellants who disagree with an administrative appeal decision of the director of ODJFS to appeal to the court of common pleas of the county in which they reside pursuant to R.C. 119.12. R.C. 5101.35(E). The trial court must then conduct a hearing, consider the entire record, and must affirm an agency's decision where it is supported by "reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. Thus, " 'an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent * * * or are otherwise unsupportable.' " *VFW Post 8586 v. Ohio Liquor Control Comm.*, 83 Ohio St.3d 79, 82, 1998-Ohio-181, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471, 1993-Ohio-182. Further, all reviewing courts must give due deference to "an administrative agency's interpretation of its own rules and regulations if such an interpretation is consistent with statutory law and the plain language of the rule itself." *OPUS III-VII Corp. v. Ohio State Bd. of Pharmacy* (1996), 109 Ohio

App.3d 102, 113 (1996), citing *Jones Metal Products Co. v. Walker*, 29 Ohio St.2d 173, 181 (1972).

**{¶26}** An appellate court's review of an administrative decision is more limited than that of a trial court. *Nye v. Ohio Bd. of Examiners of Architects*, 165 Ohio App.3d 502, 2006-Ohio-948, ¶ 11, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 1992-Ohio-122. An appellate court must determine only whether the trial court abused its discretion. *Id.* An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent an abuse of discretion, a reviewing court may not simply substitute its judgment for that of an administrative agency or the trial court. *Nye*, 165 Ohio App.3d at ¶ 11, citing *Pons*, supra.

**{¶27}** However, an appellate court does have plenary review of cases involving purely legal questions. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (citations omitted). Accordingly, because the issues raised by Helen on appeal implicate only legal questions regarding the Agency's interpretation of the applicable law, the standard of review to be applied on this appeal is *de novo*. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010–Ohio–5035, ¶ 10.

**{¶28}** Helen's arguments on appeal can be distilled into three main points.

**{¶29}** First, Helen claims the Agency's interpretation of the administrative rules finding that an "improper transfer" occurred when the home was removed from the revocable trust and transferred to Bobby after the CSRA had been established, runs contrary to the transfer provision permitting the transfer of the home between spouses without penalty. Helen contends that this transaction should be treated the same as a transfer of the home between spouses. Ohio Admin. Code 5101:1-39-07(E)(1), the transfer provision relied upon by Helen, is very clear; it requires the individual to transfer the home directly *to the individual's spouse*. Helen cites to no authority permitting spouses to *indirectly* transfer the home to one another without penalty through the use of a trust as an intermediary, nor does such a provision exist in the administrative rules. Moreover, the trust provisions specifically state that payments from a revocable trust other than to or for the benefit of the applicant or recipient of a medical assistance program are considered *improper transfers*. Ohio Admin. Code 5101:1-39-27.1(C)(2)(f)(i). There is no provision making an exception for transfers or payments from the revocable trust to the Community Spouse after the CSRA has been established. Thus, we find no error with the determinations of the prior fact finders that the administrative rules do not permit the couple to transfer the home from the revocable trust to Bobby without penalty.

{¶30} Second, Helen contends the Agency misapplied the administrative rules when it determined that Ohio Admin. Code 5101:1-39-07(G)(2) prohibits the transfer of any of the couple's assets in excess of the CSRA to the Community Spouse. Ohio Admin. Code 5101:1-39-07(G)(2) states that "[a]ny amount of a couple's resources exceeding the CSRA may not be transferred to the community spouse or to another for the sole benefit of the community spouse unless permitted in a hearing decision issued under Chapter 5101:6-7 of the Administrative Code."

{¶31} Nevertheless, Helen urges us "to find that this rule only applies to the transfer of resources that are not otherwise exempt from the improper transfer provision." (Appt. Brief at 14). In making this statement, Helen mistakenly assumes that the homestead exemption was implicated at the time the home was transferred from the revocable trust to Bobby. In order for the home to be considered exempt at the time the CSRA was established, certain criteria had to be met, one of which is that "the deed to the home must be in the individual's or individual's spouse's name." Ohio Admin. Code 5101:1-39-31(C)(1)(b). Helen fails to direct us to any code provision permitting the deed to the home to be in the name of an entity, such as a revocable trust, and still satisfy the exemption requirement that the deed be in either the individual's or the individual's spouses name. To the contrary, the trust provisions explicitly state that the corpus of the revocable trust is considered *a resource available to the applicant for or recipient*

*of a medical assistance program.* *See* Ohio Admin. Code 5101:1-39-27.1(C)(2)(b)(i). Thus, while the home was deeded in the name of the trust, the homestead exemption did not apply and there was not a transfer of an exempt asset as Helen proclaims. Notably, the administrative rules permit the Community Spouse to request a "fair hearing" if the CSRA is not adequate to meet his or her needs. Helen does not dispute that neither she nor Bobby requested a "fair hearing" to challenge the adequacy of the CSRA established by the Agency.[7]

{¶32} Helen also contests the administrative appellate panel's reliance on Ohio Admin. Code 5101:1-39-07(G)(2) and claims the administrative appellate panel created a "new, unwritten law that the portion of the transfer under the CSRA was not proper and the portion of the transfer above the CSRA was proper." (Appt. Brief at 12). Essentially, Helen is contending the Administrative Appeal Decision in which the administrative appellate panel found that the amount of the improper transfer was $59,636 rather than the $89,500 originally assessed by the Agency.

{¶33} In reviewing the Administrative Appeal Decision, it is clear that the administrative appellate panel concluded that $59,636 (or half of the couple's countable assets) had already been included in the CSRA and allocated to Bobby. The administrative appellate panel found that after the transaction of transferring

---

[7] As previously noted, by including the value of the home in the resource assessment Bobby was permitted to retain a greater amount of the couple's resources ($59,636) in the CSRA than he otherwise would have been entitled to ($17,856) if the value of the home had not been included in the resource assessment.

the home from the revocable trust to Bobby, Bobby received all of the couple's joint resources totaling $119,772. Therefore, administrative appellate panel concluded that $59,636 of the couple's resources was transferred to Bobby in excess of the CSRA as a result of this transaction, which is expressly prohibited by Ohio Admin. Code 5101:1-39-07(G)(2). Notably, also as a consequence of this transaction, the amount of the couple's resources transferred to Bobby exceeding the CSRA was no longer available to be used to cover the cost of Helen's nursing home expenses and therefore also affected the Agency's initial determination of Helen's Medicaid eligibility at the resource assessment.

{¶34} Not only do the administrative rules expressly prohibit transfer of the couple's resources to the Community Spouse in excess of the CSRA, but it is also clear from the plain language of the rules that this transaction and its attendant consequences are the precise conduct that the improper transfer rules were established to sanction against. *See* Ohio Admin. Code 5101:1-39-07(B)(5)(defining an improper transfer as "a transfer on or any time after the look-back date [] of a legal or equitable interest in a resource for less than fair market value for *the purpose of qualifying for Medicaid, a greater amount of Medicaid, or for the purpose of avoiding the utilization of the resource to meet medical needs or other living expenses*"). We also note that the administrative appellate panel's remand to recalculate the amount of the improper transfer benefited Helen because

it significantly reduced the period of restricted Medicaid coverage originally assessed by the Agency. Thus, for all these reasons, we find no error in the administrative appellate panel's interpretation of Ohio Admin. Code 5101:1-39-07(G)(2) through which it determined that only the amount of the couple's resources transferred to Bobby in excess of the CSRA should be assessed in calculating the period of restricted Medicaid coverage.

{¶35} Finally, there are at least three different provisions in the administrative code that identify and presume this transaction to be an "improper transfer." *See* Ohio Admin. Code 5101:1-39-07(C)(4), 5101:1-39-07(G)(2); 5101:1-39-21.7(C)(2)(f)(i)). Helen argues that the administrative rules only state that the transfer is *presumed* improper and that the mere existence of Ohio Admin. Code 5101:1-39-07(E), the provision permitting spouses to transfer the home to one another without penalty, is enough to rebut this presumption. In making this argument, Helen fails to consider the provisions of Ohio Admin. Code 5101:1-39-07(D), which establish the procedure for rebutting an improper transfer. This rule places the burden on the Medicaid applicant/recipient or her spouse to rebut the improper transfer by clear and convincing evidence in addition to requiring the Medicaid applicant/recipient or her spouse to submit a written accounting and documentation of the transfer that explains certain details justifying the transfer. Ohio Admin. Code 5101:1-39-07(D)(1) and (2). The record is devoid of any

attempt made by Helen or Bobby to produce the necessary documentation and evidence to rebut the presumption that an improper transfer occurred. Accordingly, we find no error with the Agency's determination that Helen failed to rebut by clear and convincing evidence the presumption that the transfer of the home from the revocable trust to Bobby constituted an improper transfer.

{¶36} In sum, the couple's home was properly included in the CSRA as a "countable resource" because the deed was titled in the name of the revocable trust at the time the Agency conducted its resource assessment and was not considered an "exempt" resource. In addition, because the home was transferred from the revocable trust to the Community Spouse, the provision permitting an exempt home to be transferred between spouses without penalty did not apply. The administrative appellate panel properly determined that the period of restricted Medicaid eligibility needed to be reduced to reflect the amount of the resources transferred to Bobby *in excess* of the CSRA. And finally, Helen failed to adequately rebut the presumption that an improper transfer occurred because she never submitted the appropriate evidence and documentation as required by the administrative rules.

{¶37} Based on the foregoing, Helen's first, second, fourth and fifth assignments of errors are overruled.

*Third and Sixth Assignments of Error*

**{¶38}** In the remaining assignments of error, Helen argues that the Agency's interpretation of the Ohio Administrative Code in this case is inconsistent with its prior determinations regarding other Medicaid applicants, and is in conflict with the federal law governing Medicaid. Helen also makes general assertions regarding the constitutionality of the Agency's determination.

**{¶39}** On appeal, Helen directs our attention to two State Hearing Decisions, which she attached to the appendix of her brief. These decisions involve the Agency's determinations of cases involving two different Medicaid applicants, who placed their homes in trust and subsequently transferred their homes to the Community Spouses after applying for Medicaid.[8] In both of these instances, the State Hearing Officers determined that an improper transfer had *not* occurred. Based on the outcome alone, Helen urges us to find that the Agency is collaterally estopped from finding an improper transfer occurred in her case.

**{¶40}** The doctrine of collateral estoppel, also known as issue preclusion, has been described as follows: "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the *same parties or their privies*, whether the cause of action in the two

---

[8] Helen submitted only one of these decisions for the trial court's consideration in the prior appeal. Thus, the trial court did not have the second case before it when it rendered its decision.

actions be identical or different." *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998) (emphasis added). Ohio courts have held that a judgment can operate as collateral estoppel only where *all of the parties to the prior proceeding in which the judgment is relied upon were bound by the judgment. Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 195 (1983). Helen was not a party to these State Hearing Decisions; in fact, one of these decisions was rendered *after* the Agency's determination in her case. Moreover, it is not discernible from the short discussions in the State Hearing Decisions whether the salient facts in those cases are even identical to the case at bar. In addition, Ohio Admin. Code 5101:6-7-01(H) provides "that State hearing decisions shall be binding on the agency or managed care plan *for the individual case for which the decision was rendered*." (Emphasis added). Accordingly, for all these reasons we conclude that the doctrine of collateral estoppel does not affect the validity of the Agency's determination in Helen's case.

{¶41} Helen also uses these State Hearing Decisions rendered in the cases of other Medicaid applicants to contend that the Agency's determinations in this case violate her equal protection rights. However, Helen did not sufficiently raise this argument to the trial court in the prior appeal. In her merit brief to the trial court, Helen failed to include any authority in support of this argument or to even raise it as an assignment of error. After the Agency filed its response, Helen

proceeded to argue the constitutionality of the trust provisions in the Ohio Administrative Code as a mere afterthought. Therefore, we conclude that Helen waived this issue on appeal. However, even if Helen adequately preserved her equal protection argument, Helen has failed to provide evidence of a discriminatory intent or purpose, which an alleged victim of an equal protection violation must prove in order to prevail. *See Instanbooly v. Ohio State Medical Bd.*, 10th Dist. No. No. 04AP-76. 2004-Ohio-3696, ¶ 23 citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977).

{¶42} Finally, Helen contends that the Agency's interpretation of the Ohio Administrative Code finding that an improper transfer in her case violates the Supremacy Clause of the United States Constitution because it is more restrictive than federal Medicaid law. In support of her argument, Helen simply cites 42 U.S.C. § 1396p(d)(3)(A) and 42 U.S.C. § 1396p(c)(2)(A), without analysis, to assert that federal law permits this transfer. However, neither of these provisions explicitly condones the transfer of the home from a revocable trust to a Community Spouse without penalty after the establishment of the CSRA. Rather, the pertinent CSRA federal provision expressly precludes the transfer of assets to the community spouse beyond the CSRA. *See* 42 U.S.C. § 1396r-5(f)(1).

**{¶43}** Furthermore, special rules apply in the circumstance in which the Medicaid applicant is an institutionalized spouse. Congress enacted a provision which resolves any potential conflicts by expressly stating that the CSRA provisions of the federal Medicaid Act supersede all inconsistent Medicaid provisions. Specifically, 42 U.S.C. § 1396r-5 states:

> **(a) Special treatment for institutionalized spouses**
>
> **(1) Supersedes other provisions. In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1) of this section), the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them.**

*See also Hughes et al v. Michael B. Colbert*, N.D. Ohio No. 5:10CV1781 (May 29, 2012), *Burkholder v. Lumpkin*, N.D. Ohio No. 3:09CV01878 (Feb. 9 2010) (recognizing the CSRA provisions supersede other inconsistent Medicaid provisions in the subchapter). Thus, even if the trust provisions in section 1396p permitted the transfer of the home under these circumstances, the CSRA provision prohibiting the transfer of assets to the Community Spouse beyond the CSRA amount controls. This is consistent with the Agency's interpretation of Ohio Admin. Code 5101:1-39-07(G)(2), which also precludes transfers of the couple's resources to the Community Spouse in excess of the CSRA. Therefore, we find no inconsistencies between Ohio and federal law on the basis Helen contends, and we further conclude that the Supremacy Clause is not implicated in this case.

Accordingly for the foregoing reasons, Helen's third and sixth assignments of error are overruled and the judgment of the Logan County Court of Common Pleas is affirmed.

**_Judgment Affirmed_**

**PRESTON, J., concurs.**

**WILLAMOWSKI, J. concurs in Judgment Only.**

**/jlr**