[Cite as *Ohio Am. Health Care, Inc. v. Ohio Bd. of Nursing*, 2014-Ohio-2422.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Ohio American Health Care, Inc.,      :
Practical Nursing Program,

     :

         Appellant-Appellant/
         Cross-Appellee,      :

             No. 13AP-1020
v.      :          (C.P.C. No. 12CVF-9723)

Ohio Board of Nursing,      :          (REGULAR CALENDAR)

         Appellee-Appellee/      :
         Cross-Appellant.

     :

Ohio American Health Care, Inc.,
Registered Nursing Program,      :

         Appellant-Appellant/      :
         Cross-Appellee,              No. 13AP-1021
     :          (C.P.C. No. 12CVF-9722)
v.
     :          (REGULAR CALENDAR)
Ohio Board of Nursing,
     :
         Appellee-Appellee/
         Cross-Appellant.      :

D E C I S I O N

Rendered on June 5, 2014

*Ronald B. Noga*, for appellant/cross-appellee.

*Michael DeWine*, Attorney General, and *Henry G. Appel*, for appellee/cross-appellant.

APPEALS from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1}   Appellant-appellant/cross-appellee, Ohio American Health Care, Inc., Practical Nursing Program, and Registered Nursing Program ("the School"), appeals from a judgment of the Franklin County Court of Common Pleas affirming two orders of appellee-appellee/cross-appellant, Ohio Board of Nursing ("the Board"), withdrawing conditional approval and denying full approval of the School's status to operate nurse education programs.  The Board cross-appeals from the court's modification of its orders removing the permanency of the imposed sanctions.  Because the trial court did not err either in affirming the Board's orders or in removing the permanent condition from the sanctions, we affirm.

## I. Facts and Procedural History

{¶ 2}   In October 2009, the School applied to the Board for approval of a new nursing education program and included a detailed plan for how it proposed to conduct its program and a proposed organizational structure.  The School sought to operate both a registered nurse ("RN") program and a licensed practical nurse ("PN") program.  The Board issued conditional approval of both the RN and PN programs in January 2010.  On May 17, 2010 the School admitted its first cohort of students.

{¶ 3}   On March 22, 2011, the Board conducted an unannounced survey visit to the School in response to complaints the Board had received from students, former employees, and clinical agencies regarding both the RN and PN programs.  Following the initial unannounced survey visit, the Board conducted further survey visits announced in advance: the RN survey visit occurred May 25, 2011 while the PN survey visits occurred June 22, September 8, and October 12, 2011.  These visits revealed administrative compliance violations and discrepancies in the tuition and fee amounts in the students' enrollment agreements as compared to the School's proposal for its nursing program presented to the Board.  The two education regulatory surveyors who conducted the survey visits generated reports detailing the findings of their visits and subsequently sent the survey visit reports to the School for response.

{¶ 4}   After reviewing the survey visit reports and the School's responses, the Board issued a July 28, 2011 notice of opportunity for hearing to the School related to the RN program, charging it with numerous violations of the rules governing nurse education

programs. As the investigation into the School proceeded, the Board issued a second and third notice of opportunity for hearing alleging additional violations. Similarly, on November 18, 2011, the Board issued a notice of opportunity for hearing to the School related to alleged violations found in the PN program followed by a second notice of opportunity for hearing related to additional violations in the PN program. The School timely requested hearings for all notices received by both programs. The Board assigned a single hearing examiner to both cases.

{¶ 5} The School moved for consolidation of the three RN program notices into a single hearing, and the hearing examiner approved the consolidation. The hearing examiner also granted two continuances to the School. Several weeks before the scheduled start of the consolidated hearing, the School moved for another continuance on the grounds that the School's program administrator had suddenly resigned and that the School had retained new counsel. The hearing examiner denied the School's third request for a continuance, and the hearing occurred from April 30 to May 4, 2012. Both the School and the Board presented witness testimony and documentary evidence and had the opportunity to cross-examine each other's witnesses.

{¶ 6} Similarly, the School moved for consolidation of both PN notices into a single hearing and the hearing examiner conducted the consolidated hearing on May 29 and 30, 2012. Again, both the School and the Board presented witness testimony and documentary evidence and had the opportunity to cross-examine each other's witnesses. The parties also agreed to incorporate the record of the RN hearing into the record of the PN hearing as many of the issues in the cases were interrelated.

{¶ 7} Following the hearings, the hearing examiner issued lengthy decisions in the RN case on June 13, 2012 and the PN case on June 25, 2012. In each decision, the hearing examiner determined there was ample reliable and probative evidence to support the violations charged against the School, and the hearing examiner recommended permanent withdrawal of the School's conditional approval to operate a nurse education program.

{¶ 8} The School timely objected to the hearing examiner's two decisions, and the Board conducted a consolidated hearing as to both the RN and PN programs on July 27, 2012. That same day, the Board issued adjudication orders in both cases adopting the

hearing examiner's report and recommendation from each case in full.  The Board imposed a penalty of permanent withdrawal of the School's conditional approval status and permanent denial of full approval status.

{¶ 9}  Pursuant to R.C. Chapter 119, the School timely appealed to the common pleas court.  In reviewing the entire record, the common pleas court determined there was reliable, probative, and substantial evidence to support each of the charged violations against the School.  However, the common pleas court determined the Board lacked statutory authority to permanently withdraw conditional approval and permanently deny full approval to the school.  To that extent, the common pleas court modified the Board's adjudication orders to remove the permanent nature of the penalties imposed.  The School and the Board both timely appeal.

## II. Assignments of Error

{¶ 10}  The School assigns the following three assignments of error for our review:

> [1.] The trial court erred as a matter of law in failing to reverse the Adjudication Order pertaining to the RN Program on the ground that the Order is  based entirely on patently irrelevant, inadmissible and prejudicial evidence.

> [2.] The trial court erred as a matter of law in failing to reverse the Adjudication Order pertaining to the PN Program on the ground that the Order is based entirely on patently, irrelevant, inadmissible and prejudicial evidence.

> [3.] The statutory scheme governing the regulation of prelicensure nursing schools is violative of Due Process in that the basis for withdrawal of approval is unconstitutionally vague [and] results in an arbitrary and unreasonable Order withdrawing [the School's] approval to operate a prelicensure nursing school.

{¶ 11}  The Board assigns the following cross-assignment of error for our review:

> 1. The [trial court] improperly concluded that the Ohio Board of Nursing lacks power to permanently withdraw approval to nursing programs under R.C. 4723.28(K).

### III. Standard of Review

{¶ 12} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is "in accordance with law." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 13} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, however, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

### IV. Appellant's First Assignment of Error – Evidence Supporting RN Program Violations

{¶ 14} In its first assignment of error, the School argues the common pleas court erred in affirming the violations in the Board's adjudication order for the RN program.

{¶ 15} In its adjudication order, the Board adopted the hearing examiner's findings of fact which found 16 separate proven violations of the Board's rules. These violations were wide ranging. The hearing examiner found, with respect to the RN program, that the School: (1) did not implement an orientation policy for faculty members in violation of Ohio Adm.Code 4723-5-09(B)(4); (2) did not implement student policies as they were

written in the School's proposal for its program in violation of Ohio Adm.Code 4723-5-12; (3) did not implement its curriculum as written at the time of the first notice, including having students watch a movie instead of teaching a psychology course and failing to provide clinical experience to the students in violation of Ohio Adm.Code 4723-5-13; (4) had no systematic plan of evaluation it could use to evaluate and improve the program in violation of Ohio Adm.Code 4723-5-15; (5) did not provide students with a syllabus for each course in violation of Ohio Adm.Code 4723-5-19(A); (6) did not provide the ten weeks of clinical experience with appropriate supervision that students were supposed to have received in violation of Ohio Adm.Code 4723-5-20; (7) did not maintain required faculty records and retained unqualified instructors in violation of Ohio Adm.Code 4723-5-21; (8) submitted false progress reports to the Board in violation of Ohio Adm.Code 4723-5-25; (9) charged students a total of $18,520 in tuition when the School's written policies for student fees indicated it would charge students $14,048, in violation of Ohio Adm.Code 4723-5-12(A)(6); (10) allowed unqualified individuals other than the program administrator to have authority over aspects of the program in violation of Ohio Adm.Code 4723-5-09(B); (11) at the time of the third notice, had faculty members who were not qualified for their positions in violation of Ohio Adm.Code 4723-5-10; (12) at the time of the third notice, continued to fail to provide adequate documentation of student admission prerequisites, allowed students to progress from one course to the next without completing the first course, and certified completion of courses for two students who never completed the necessary lab and clinical experience of the course, in violation of Ohio Adm.Code 4723-5-12(A); (13) failed to provide the 16 clinical hours for the medical/surgical course the School had stated in its curriculum plan it would provide, and failed to provided clinical evaluations for all 6 students in the gerontology course in violation of Ohio Adm.Code 4723-5-13; (14) at the time of the third notice, still did not have a systematic plan of evaluation to evaluate and improve the program in violation of Ohio Adm.Code 4723-5-15; (15) at the time of the third notice, continued to fail to provide appropriate clinical experience for students, including completely failing to provide clinical evaluations to some students and inadequately providing clinical experience to other students by providing clinical experience that was not connected to the course the students were taking and using unqualified instructors as supervisors in violation of Ohio

Adm.Code 4723-5-20; and (16) failed to implement a records retention plan for student and faculty records, including the complete failure to document that 15 students had met admission requirements, no record of clinical experience evaluations for 4 students, no academic transcripts for instructors, and certification that 2 students had completed the program but their files had no transcripts of coursework, in violation of Ohio Adm.Code 4723-5-21. (RN Program Report and Recommendation, 80-83.)

{¶ 16} Despite the long and detailed list of violations, the School on appeal does not challenge the bulk of these violations with any specificity. Rather, the School asserts the hearing examiner made an erroneous and unfounded finding of "blatant corruption and dishonesty," and because of that, the entire proceedings were tainted. (RN Program Report and Recommendation, 85.) Specifically, the School asserts three evidentiary errors were so significant as to warrant reversal of the Board's order.

### A. Witness Credibility

{¶ 17} The School argues the hearing examiner erroneously concluded that Julia Wilson gave credible testimony that Dr. Yemi Oladimeji, the owner of the School, instructed her to change students' grades so they would pass a test or a course. According to the School, Wilson was not a credible witness and her testimony contained internal inconsistencies. Both the hearing examiner and the Board found Wilson's testimony to be credible. The common pleas court engaged in its own consideration of Wilson's credibility and similarly found Wilson's "testimony to be credible." (Nov. 5, 2013 Judgment Entry, 8.) To the extent the School suggests we reweigh the credibility of the witnesses, "such an exercise is not appropriate for this court's role in reviewing the common pleas court's decision." *Ohio Dept. of Rehab. & Corr. v. Price*, 10th Dist. No. 10AP-260, 2010-Ohio-5629, ¶ 21.

### B. Reasonable Inferences

{¶ 18} The School asserts the hearing examiner, in support of her finding that the school wrongfully and willfully certified completion of the program for two students, completely fabricated her conclusion that Susan Walker Thomas was fired as program administrator because she refused to sign certificates of completion for the two students and that the newly hired program administrator "promptly signed the certificates" after Thomas was fired. (RN Program Report and Recommendation, 85.) The School argues

there was no direct testimony that Thomas was fired for her refusal to falsely certify completion of clinical experience. Specifically, the School argues the hearing officer's conclusion was a fabrication because Thomas testified she intended to resign to pursue other employment before her termination while Dr. Oladimeji denied Thomas' refusal to sign the certificates was the basis for Thomas' dismissal from the School.

{¶ 19} Given the timing of Thomas' termination, it was a reasonable inference that her termination was related to her refusal to comply with the falsification of records. *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, ¶ 69 (stating "any factfinder in any administrative, civil, or criminal proceeding, may draw reasonable inferences and rely on his or her own common sense in evaluating the evidence"). The common pleas court also noted how quickly the newly-hired program administrator certified completion for these students. Further, the trial court reviewed all the evidence and did not find Dr. Oladimeji to be credible on this matter, so the trial court was free to discount his testimony, and we will not engage in a reweighing of the witness' credibility. *Price* at ¶ 21. Thus, the common pleas court did not abuse its discretion in concluding from this evidence that the School wrongfully and willfully certified completion of the program for two students.

### C. Prejudicial Evidence

{¶ 20} Lastly under this assignment of error, the School asserts the hearing examiner erroneously determined that the involvement of Reverend Harold John, a member of the School's board, contributed to the presence of fraud and corruption at the School. The hearing examiner noted John had recently pled guilty to conspiracy to commit bank fraud and wire fraud. John then served as the School's "Interim Strategic and Financial Officer," although the evidence indicated that John was functionally in control of the entire program for a period of time.

{¶ 21} The School argues the evidence of John's criminal convictions was irrelevant and blatantly prejudicial, and the hearing examiner, the Board, and the common pleas court all erred in relying on it. As a general rule, "administrative agencies are not bound by the strict rules of evidence applied in courts." *Buckles v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 07AP-932, 2008-Ohio-1728, ¶ 23, citing *Haley v. Ohio State Dental Bd.*, 7 Ohio App.3d 1, 6 (2d Dist.1982).

{¶ 22} As the common pleas court noted, "the Board's adjudication order made no reference to Rev. John's conviction – or even his participation in the [S]chool's management on any level." (Nov. 5, 2013 Judgment Entry, 10.) Although the School argues the Board was prejudiced by the Board's attorney projecting information regarding John's conviction on a large screen as part of a slide presentation at the hearing, the common pleas court noted only one slide of the presentation related to John's criminal background. Further, the common pleas court explained that even if the hearing examiner should not have admitted the evidence of John's criminal convictions, the other evidence in the record "was so overwhelming" as to render the error harmless. (Nov. 5, 2013 Judgment Entry, 11.) *See Abunku v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-906, 2012-Ohio-2734, ¶ 20 (it is not an abuse of discretion for trial court to affirm an order of the state medical board where, even if the hearing examiner inappropriately admitted some evidence, the appellant "was not prejudiced because other reliable, probative, and substantial evidence in the record" proved the violations). Additionally, as the common pleas court noted, the issues with John's presence at the school were not limited to his criminal background but also the fact that he essentially served as the School's program administrator even though he did not have a nursing license and was therefore unqualified for that position.

{¶ 23} As the Board notes, the School does not challenge most of the allegations against it. The trial court reviewed the extensive record and carefully weighed the evidence before concluding the hearing examiner and the Board had reliable, probative, and substantial evidence to find the many violations. Based on the record before us, we find the common pleas court did not abuse its discretion in finding that reliable, probative, and substantial evidence supports the Board's order. Thus, we refuse to substitute our judgment for that of the Board or the common pleas court.

{¶ 24} Accordingly, we overrule the School's first assignment of error.

## V. Appellant's Second Assignment of Error – Evidence Supporting PN Program Violations

{¶ 25} In its second assignment of error, the School argues the common pleas court erred by affirming the violations in the Board's adjudication order for the PN program. More specifically, the School argues the common pleas court erred by relying

on unduly prejudicial evidence by not considering that the Board's decision making process inherently lends itself to unreliable outcomes, and by imposing a penalty that was too severe for the nature of the offenses.

### A. Prejudicial Evidence

{¶ 26} The School notes that the parties agreed that the testimony from the RN program hearing would be incorporated into the PN program hearing. The School argues that because the hearing examiner duplicated the errors she committed in the RN program case when she considered the evidence again in the PN program case, the common pleas court thus erred in relying on what the School deems "clearly inadmissible, prejudicial evidence." (The School's Brief, 21.)

{¶ 27} The School reiterates in this argument its position that the evidence regarding the criminal background of John was so highly prejudicial to have tainted the entirety of the proceedings at every level. Having addressed and rejected this same argument in our resolution of the School's first assignment of error, we similarly dispose of this same argument here. The School's argument as to prejudicial evidence is not well-taken.

### B. Impartial Tribunal

{¶ 28} The School next argues that because there is no requirement that any member of the Board have any legal or judicial training, the Board members are completely dependent on the representations of the Board's counsel. Unlike in a civil or criminal trial where lay jurors have an impartial judge to give instructions on matters of law, the Board members in an administrative adjudication hearing rely on the same attorney that represents the Board to explain the legal issues. According to the School, this renders the process unfair as the Board members are unlikely to ignore the instructions and characterization of the evidence of the very attorney it has retained to represent the Board's interests.

{¶ 29} An individual in an administrative proceeding is entitled to a fair hearing before an impartial tribunal. *Serednesky v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-633, 2006-Ohio-3146, ¶ 21, citing *In re Murchison*, 349 U.S. 133, 136 (1955). An administrative agency's determination carries a presumption of validity, and the burden is on the appellant to establish bias. *Id.*, citing *Smith v. State Med. Bd.*, 10th Dist. No.

00AP-1301 (July 19, 2001). This burden requires that the School prove, beyond merely stating that bias and prejudice exist, that the Board's members are "biased, partial or prejudiced to such a degree that [their] presence adversely affected" the Board's decision. *West Virginia v. Hazardous Waste Facility Approval Bd.*, 28 Ohio St.3d 83, 86 (1986).

{¶ 30} The School did not raise its argument regarding the perceived undue influence that an attorney can have in an administrative hearing either in its hearing before the Board or at the common pleas court and, thus, that argument is waived for purposes of appeal. *ETB Corp. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-738, 2003-Ohio-589, ¶ 22.

### C. Nature of the Offenses and Penalty

{¶ 31} The School also argues that even if the evidence at the hearing supported a finding of the many violations, these violations were not so serious as to warrant the penalty of withdrawal of conditional approval and denial of full approval to operate its nursing education program.

{¶ 32} The Board agreed in its adjudication order with the hearing examiner's findings of fact that the School was not in compliance with the following rules as they related to the PN program: Ohio Adm.Code 4723-5-09(B)(4); 4723-5-12(A)(1); 4723-5-12(A)(4); 4723-5-12(A)(6); 4723-5-14; 4723-5-15; 4723-5-19(A); 4723-5-05(B) and (C); 4723-5-09(B); 4723-5-11; 4723-5-12(A)(6); 4723-5-14(E)(12); 4723-5-14(F); 4723-5-15; 4723-5-20(C)(6); and 4723-5-21. (PN Program Report and Recommendation, 56-59.) Many of these violations were substantially similar to the violations found in the RN program, including but not limited to failing to provide and evaluate clinical experience, using unqualified administrators and faculty members, charging inconsistent fee and tuition amounts, and failing to maintain a systematic plan of evaluation to evaluate and improve the program. Rather than challenge the merits of these violations, the School instead argues that although it did not necessarily refute these deficiencies, they "resulted primarily from the incompetence and negligence of the initial Program Administrator," Rosanna Bumgardner. (The School's Brief, 25-26.) The School characterizes many of these violations as mere paperwork errors and suggests the penalty of withdrawal of conditional approval and denial of full approval was too harsh of a penalty for the violations involved.

{¶ 33} The School's attempt to shift the blame of the violations to Bumgardner does not mean that the violations did not occur; indeed, the School seems to admit as much. As the common pleas court noted, "to blame Dr. Bumgardner ignores the fact that the School and its board of governors hired her – even if she was not up to the task, those parties bear some responsibility for not recognizing that sooner and taking appropriate action." (Nov. 5, 2013 Judgment Entry, 21.)

{¶ 34} Further, we do not agree with the School that these violations were of an administrative, recordkeeping nature. The evidence at the hearing that the trial court found credible included testimony that PN students had 0 clinical hours in the medical/surgical nursing and IV therapy course while they were supposed to receive 72 hours of clinical training in those areas. Similarly, one cohort of students completed only 16 of the 40 clinical hours for the maternal and child health nursing course, and the School's proposal initially called for 72 hours of clinical training for that course. Additional testimony showed only one student had the opportunity to insert an IV in a clinical setting. Despite the lack of required clinical hours, the School would still send students on to more advanced courses. These violations go beyond mere paperwork errors.

{¶ 35} Regardless of the School's characterization of the seriousness of these offenses, withdrawal of conditional approval and denial of full approval are undoubtedly penalties within the range of penalties allowed by the Board's rules and the Board has the discretion to impose those penalties. R.C. 4723.06; Ohio Adm.Code 4723-5-04(B). The School argues it should have been offered a consent agreement as contemplated in Ohio Adm.Code 4723-5-04(B)(5) rather than the withdrawal of conditional approval and denial of full approval. Setting aside the permanency of the penalty, which we will address in our resolution of the Board's cross-assignment of error, the Board's decision as to penalty cannot be disturbed on appeal if it is supported by reliable, probative, and substantial evidence. *Little v. State Med. Bd. of Ohio*, 10th Dist. No. 10AP-220, 2010-Ohio-5627, ¶ 14, citing *Miller v. Columbus City Pub. Schools*, 10th Dist. No. 08AP-1082, 2009-Ohio-2756, ¶ 11, citing *State ex rel. Ogan v. Teater*, 54 Ohio St.2d 235, 246-47 (1978). Because reliable, probative, and substantial evidence supports the Board's order finding 16

separate violations for the PN program, neither the common pleas court nor this court can modify the statutorily authorized penalty the Board imposed.

{¶ 36} The School's second assignment of error is overruled.

## VI. Appellant's Third Assignment of Error – Constitutional Challenges

{¶ 37} The School argues in its third and final assignment of error that the statutory scheme "is violative of Due Process in that the basis for withdrawal of approval is unconstitutionally vague [and] results in arbitrary and unreasonable Order withdrawing [the School's] approval. " (The School's Brief, ii.)

### A. Waiver

{¶ 38} The Board asserts the School did not raise its void-for-vagueness argument in the common pleas court. An administrative appellant who fails to raise the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, waives those arguments for purposes of appeal. *Bailey v. Ohio State Dept. of Transp.*, 10th Dist. No. 07AP-849, 2008-Ohio-1513, ¶ 15, citing *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus (stating the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal"). Thus, the Board argues that because the School failed to raise its constitutional challenge to the administrative scheme at the trial court level, it has waived that argument and we need not address it.

{¶ 39} While the Board is correct that the School did not explicitly raise a void-for-vagueness argument in the common pleas court, the School raised various, generalized arguments containing constitutional issues. As relevant here, the School stated in its notice of appeal to the common pleas court that "[t]he statutory scheme for regulating nursing schools * * * is unconstitutional as there are no statutory or other standards establishing the circumstances under which conditional approval should be withdrawn rendering the action of [the] Board arbitrary, unreasonable and contrary to law." (Aug. 1, 2012 Notice of Appeal, 2.) Although the School did not use the exact phrase "void for vagueness" to describe its argument, this language approximates the language of a typical vagueness challenge.

{¶ 40} Still, the School did not elaborate on the substance of this objection in its briefing to the common pleas court, and the common pleas court did not address whether the statutory scheme was unconstitutionally vague in its judgment entry. The Board asks us to find waiver on this basis. *See Williams v. Ohio Dept. of Job & Family Servs.*, 3d Dist. No. 8-11-18, 2012-Ohio-4659, ¶ 41 (noting an administrative appellant arguably waives constitutional challenge based on equal protection grounds where the appellant failed to include any authority in support of that argument in her merit brief to the trial court); *Davis v. Cleveland*, 8th Dist. No. 99187, 2013-Ohio-2914, ¶ 16 (an appellate court could find an appellant has waived an argument on appeal where, although appellant made reference to an argument in her complaint with the trial court, she did not develop the argument in her brief submitted before the trial court). While we agree with the Board that the School did not fully develop the vagueness argument in the common pleas court, the School throughout the proceedings has consistently advanced some version of its argument that the consent agreements offered to other nursing education programs demonstrate there is no objective standard as to when the Board will impose a certain penalty for a given violation. Though it is unclear whether the School fully argued its constitutional claims in the common pleas court, this does not present a case of clear waiver of a constitutional argument, regardless, an appellate court has discretion to consider constitutional challenges to the application of statutes even where the waiver is clear. *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus. Thus, we will address the merits of the School's vagueness argument.

## B. Constitutionality of Statutory and Regulatory Scheme

{¶ 41} Even though we conclude the School did not waive this issue, the School's void-for-vagueness argument lacks merit. The "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008). "Due process demands that the law give sufficient warning of what conduct is proscribed so that people may conduct themselves so as to avoid that which is forbidden." *Columbus v. Bahgat*, 10th Dist. No. 10AP-943, 2011-Ohio-3315, ¶ 20, citing *Rose v. Locke*, 423 U.S. 48, 50 (1975). When a party challenges a statute or rule under the void-for-vagueness doctrine, "the court must determine whether the enactment (1) provides sufficient notice of its proscriptions to

facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 84, citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

{¶ 42} "The void-for-vagueness doctrine 'does not require statutes to be drafted with scientific precision.' " *Buckley v. Wilkins*, 105 Ohio St.3d 350, 2005-Ohio-2166, ¶ 19, quoting *Perez v. Cleveland*, 78 Ohio St.3d 376, 378 (1997). Courts should indulge every reasonable interpretation in favor of finding the statute constitutional. *Perez* at 378-79. "A civil statute that does not implicate the First Amendment is unconstitutionally vague only if it is so vague and indefinite that it sets forth no standard or rule or if it is substantially incomprehensible." *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, ¶ 46. Administrative regulations similarly do not require the same degree of specificity as criminal statutes. *Serednesky* at ¶ 16.

{¶ 43} R.C. 4723.06 governs the powers of the Board in approving and supervising the operation of nursing education programs. In turn, R.C. 4723.07(B) grants the Board the authority to adopt rules that establish the "[m]inimum standards for nursing education programs that prepare graduates to be licensed under this chapter and procedures for granting, renewing, and withdrawing approval of those programs." Pursuant to its rulemaking authority, the Board has promulgated various rules to aid in it supervision of nursing education programs.

{¶ 44} Ohio Adm.Code 4723-5-02 provides in part:

> (A) A program must meet and maintain the requirements set forth in this chapter in order to maintain approval by the board.
>
> (B) The board shall evaluate whether a program is meeting and maintaining the requirements of this chapter, and shall determine a program's approval status in accordance with this chapter. The board shall have the authority to review all documents retained by the program that are required by this chapter.
>
> (C) Failure to meet and maintain a requirement of this chapter shall be considered noncompliance and may affect a

program's approval status, upon action by the board in accordance with rule 4723-5-04 of the Administrative Code.

{¶ 45} Further, Ohio Adm.Code 4723-5-04 states in pertinent part:

(A) The board shall grant full approval status to programs holding:

(1) Full approval, if a program demonstrates to the board that it continues to meet and maintain the requirements of this chapter;

(2) Conditional approval, at the first board meeting following completion of the survey process required by division (A)(5) of section 4723.06 of the Revised Code, provided the program demonstrates to the board that it meets and maintains the requirements of this chapter;

(3) Provisional approval, if the program demonstrates to the board that it meets and maintains the requirements of this chapter.

(B) The following procedures shall be followed by the board when a program does not meet and maintain the requirements of this chapter:

(1) For a program with conditional approval, the board shall propose to withdraw conditional approval pursuant to an adjudication under Chapter 119. of the Revised Code. The adjudication may result in the continuance of conditional approval, continuance of conditional approval based on compliance with the terms and conditions of a board order or consent agreement, or withdrawal of conditional approval;

(2) For a program with full approval, the board shall place the program on provisional approval in accordance with this chapter. When a program is placed on provisional approval, the board shall specify the requirements the program has not met and maintained and shall establish the time period during which the program will be on provisional approval. The board shall reconsider the program's approval status when the program demonstrates to the board that it meets and maintains the requirements of this chapter;

(3) If a program on provisional approval continues to fail to meet and maintain the requirements of this chapter at the end

of the time period established for provisional approval, the board may propose to continue provisional approval for a period of time specified by the board or may propose to withdraw approval pursuant to an adjudication under Chapter 119. of the Revised Code. The adjudication may result in the continuance of provisional approval, withdrawal of approval, or granting of full approval;

(4) If a program on provisional approval in accordance with this chapter demonstrates that an additional requirement is not being met and maintained, the board shall propose to withdraw approval pursuant to an adjudication under Chapter 119. of the Revised Code. The adjudication may result in the continuance of provisional approval, withdrawal of approval, or granting of full approval;

(5) The board may enter into a consent agreement in lieu of conducting an adjudication under this rule that addresses the requirements of this chapter not met and maintained.

{¶ 46} The School asserts that, based on the plain language of the statutes and accompanying rules, the Board does not have specific criteria for when it will impose which sanction. Because the sanctions vary in their severity, the School argues the lack of guidelines as to when each sanction is appropriate renders the statutory and regulatory scheme unconstitutionally vague.

{¶ 47} A party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). *See also State v. Ferguson*, 57 Ohio St.3d 176, 177 (1991). Here, the School does not argue that it did not violate certain provisions of Chapter 4723-5 of the Ohio Administrative Code, nor does it argue that it did not know certain conduct was prohibited; rather, the School disagrees with the amount of discretion afforded the Board to impose the penalty of withdrawal of conditional approval under Ohio Adm.Code 4723-5-04(B).

{¶ 48} The School argues that because there is not an articulable standard as to when the Board will impose the more severe penalty of withdrawal of approval versus the less severe approach of entering into a consent agreement, the rule results in ad-hoc and arbitrary enforcement and is, thus, unconstitutionally vague. In support of its argument,

the School points to consent agreements between the Board and other nursing programs found to be in violation of some of the same rules as the School here.

{¶ 49} What the School ignores in its argument is that the consent agreements between the Board and the other nursing education programs do not indicate the Board is arbitrarily enforcing the statute and rule; rather, they indicate that the Board consistently takes some disciplinary action against nursing education programs found to be in violation of the Board's rules.  As we noted in our resolution of the School's second assignment of error, the Board has available to it a wide range of possible penalties to impose, including entering into a consent agreement or withdrawal of conditional approval and denial of full approval.  The School does not assert that the Board was without authority to impose any one of these penalties; it just disagrees with the precise sanction the Board chose.

{¶ 50} Moreover, the School's argument ignores the important role the Board must play in considering the specific factual circumstances of each case before selecting the appropriate penalty.  By way of analogy, we look to the discretion given to trial court judges in criminal sentencing.  "[I]n imposing sentence, the assessment of and weight given to mitigating evidence are within the trial court's discretion."  *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 230, citing *State v. Lott*, 51 Ohio St.3d 160, 171 (1990). " '[T]he weight, if any, to assign a given factor is a matter for the discretion of the individual decisionmaker.' "  *Id.*, quoting *State v. Fox*, 69 Ohio St.3d 183, 193 (1994).

{¶ 51} Here, there is little dispute as to whether the School committed these violations, and the School does not argue the Board lacked the authority to impose the sanctions of withdrawal of conditional approval or denial of full approval.

{¶ 52} Although the School argues the Board treated it differently from other nursing education programs found to have violated the same administrative code provisions by offering consent agreements to those programs rather than withdrawal of approval to operate, the School does not suggest those violations included the same flagrant conduct at issue here.  The factual findings of the hearing examiner, as affirmed by the Board and the common pleas court, show the sometimes egregious conduct on the part of the School and an inability to improve the situation throughout the numerous survey visits.  The fact that other nursing education programs received different penalties

than the School does not render the statutory and regulatory scheme vague where the factual record is distinct for each nursing education program. The School points to no authority to suggest it received constitutionally intolerable treatment from the Board when the Board withdrew the School's conditional approval and denied the School's full approval as authorized by R.C. 4723.06 and Ohio Adm.Code 4723-5-04.

{¶ 53} Generally, where the sanction imposed by an administrative agency is within the range of permissible sanctions provided by law, we are without authority to modify that sanction. *Little* at ¶ 23. Even where an administrative appellant alleges some sort of disparate treatment and produces evidence of other cases where the party received a less serious penalty for a more serious offense, the trial court does not err in affirming the penalty imposed by the agency so long as the agency's findings merit the imposed penalty. *Graor v. State Med. Bd.*, 10th Dist. No. 04AP-72, 2004-Ohio-6529, ¶ 34-36, discussing *Urban v. State Med. Bd.*, 10th Dist. No. 03AP-426, 2004-Ohio-104, ¶ 22.

{¶ 54} The statute and rules governing the Board appropriately accord discretion to the Board in determining various penalties. That scheme is not unconstitutionally vague, nor does it suffer any other less-specific constitutional infirmity the School may allege. The possible penalties of withdrawal of conditional approval and denial of full approval are clearly stated in the statute and accompanying rule, and, as stated above, were warranted here. Thus, we overrule the School's third assignment of error.

## VII. Appellee's Cross-Assignment of Error – Permanency of Sanction

{¶ 55} In its sole cross-assignment of error, the Board argues the common pleas court erred in modifying its imposed penalties to remove the permanent nature of the penalties.

{¶ 56} As a preliminary matter, the Board asserts the School did not specifically object to the permanent nature of the penalty imposed by the Board. Because the School did not object, the Board argues the school waived any error with regard to permanency of penalty and the trial court erred in sua sponte modifying the penalty. In reviewing an administrative order under R.C. Chapter 119, the common pleas court is charged with ensuring the administrative order is in accordance with law. *Conrad* at 110-11.

{¶ 57} The common pleas court reviewed the Board's orders and considered whether the Board had the statutory authority to impose a permanent penalty. Thus, we

do not agree with the Board that the School waived this issue, nor do we agree that the trial court erred in addressing whether the Board had the statutory authority to impose its chosen sanction.

{¶ 58} Moving to the merits of the cross-appeal, the Board argues it had authority under R.C. 4723.28(K) to specify that its penalty was permanent. The Board has only those powers explicitly delegated by statute and must operate within the limitations contained within its enabling statutes. *Shell v. Ohio Veterinary Med. Licensing Bd.*, 105 Ohio St.3d 420, 2005-Ohio-2423, ¶ 32, citing *Johnson's Mkts., Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 36 (1991). Further, if the Board imposes a sanction that is within its statutory authority, courts have no authority to reverse or modify it. *ATS Inst. of Technology v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-385, 2012-Ohio-6030, ¶ 41, citing *Roy v. State Med. Bd.*, 80 Ohio App.3d 675, 683 (10th Dist.1992).

{¶ 59} R.C. 4723.28(K) states: "When the [B]oard refuses to grant a license or certificate to an applicant, revokes a license or certificate, or refuses to reinstate a license or certificate, the [B]oard may specify that its action is permanent. An individual subject to permanent action taken by the [B]oard is forever ineligible to hold a license or certificate of the type that was refused or revoked and the [B]oard shall not accept from the individual an application for reinstatement of the license or certificate or for a new license or certificate." The Board argues that although R.C. 4723.06(A) does not use the term "license" to describe the authority of a nursing education program to operate, a "license" is clearly what the statute contemplates.

{¶ 60} In concluding the Board lacked the authority to make its sanction permanent, the trial court relied on this court's decision in *ATS Inst. of Technology*. In that case, we concluded that while R.C. 4723.06(A) permits the Board to continue provisional approval, withdraw provisional approval, or grant full approval of a nursing education program, that statute does not "provide the [B]oard with authority to establish a period of time during which appellant can be barred from re-applying for approval of its" program. *ATS Inst. of Technology* at ¶ 42.

{¶ 61} In *ATS Inst. of Technology*, the Board withdrew provisional approval and denied full approval and further imposed a two-year time limit before the nursing education program could reapply for approval. This court determined R.C. 4723.06(A)

does not confer actual authority for a time limit, nor does it confer the implied authority to impose a time limit on when the nursing education program could reapply for approval. *Id.* at ¶ 43.

{¶ 62} Here, the Board argues reliance on *ATS Inst. of Technology* is misplaced because that case did not contemplate the effect of R.C. 4723.28(K). The trial court concluded, however, that R.C. 4723.28(K) is inapplicable, and we agree. By its express terms, R.C. 4723.28(K) applies to individuals. It makes no mention of nursing education programs. Though the Board urges us to construe a nursing education program's authority to operate as an implicit license, the plain language of the governing statutes do not support such a conclusion. R.C. 4723.06 grants the Board the authority to regulate and grant approval to what it describes as "prelicensure nursing education programs" which "include, but are not limited to, diploma, associate degree, baccalaureate degree, master's degree, and doctor of nursing programs *leading to initial licensure to practice nursing* as a registered nurse and practical nurse programs *leading to initial licensure to practice nursing* as a licensed practical nurse." (Emphasis added.) R.C. 4723.06(A)(5). Further, R.C. 4723.07(B) grants the Board the authority to adopt rules that establish "[m]inimum standards for nursing education programs *that prepare graduates to be licensed* under this chapter." (Emphasis added.) Taken together, it is clear from the statutory scheme that *individuals* apply for nursing licenses after completing education at a prelicensure nursing education program. All other references to a "license," "licenses" or "certificates" refer to individuals as well. R.C. 4723.06(A)(2) and (3).

{¶ 63} The Board nonetheless argues the School must have had a "license" because if it did not, then R.C. 119.06 would not provide the School with a right to a hearing. However, R.C. 4723.06(A)(6) expressly provides that if a nursing education program has conditional approval but does not receive full approval from the Board, then "the board shall hold an adjudication under Chapter 119. of the Revised Code." Thus, the Board's argument that the School had a "license" as that term is used in Chapter 119 of the Ohio Revised Code is unpersuasive.

{¶ 64} Because the plain language of both R.C. 4723.06 and 4723.28(K) provides that the Board's authority to make a penalty permanent applies only to individuals and not to nursing education programs, the trial court did not err in concluding the Board

lacked the authority to make its penalty permanent. We do not read the statutes governing nursing education programs as granting an implied "license" or "certificate" of operation to prelicensure nursing education programs subject to permanent revocation under R.C. 4723.28(K). To the extent the Board argues that if ever there was a case supporting permanent withdrawal of conditional approval and permanent denial of full approval it is this case, we note that unless and until the General Assembly grants the Board such authority, we are bound by our previous holding in *ATS Inst. of Technology*. Accordingly, we overrule the Board's sole cross-assignment of error.

## VIII. Disposition

{¶ 65} Based on the foregoing reasons, the trial court did not err in affirming the Board's orders as to the violations and in modifying the penalties to remove the permanency condition. Having overruled the School's three assignments of error and the Board's sole cross-assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*


KLATT and CONNOR, JJ., concur.